## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**STEPHEN TITZER**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 07-4117**

**N. BURL CAIN, WARDEN**                              **SECTION "S"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      Factual and Procedural Background

The petitioner, Stephen Titzer ("Titzer"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Titzer was indicted by a grand jury in Terrebonne Parish on February 17, 2000, in Case No. 341590 for the aggravated anal and vaginal rape of his girlfriend's six year old daughter, T.K., over the course of three years, 1987, 1988, and 1989. He

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 5.

was indicted that same day in Case No. 341591 for the oral sexual battery upon T.K. for committing lewd and lascivious acts upon T.K. with the intention of gratifying his sexual desires, all over the course of the same three years.[3]

The record reflects that, during 1987, 1988, and 1989, Titzer committed repeated acts of sexual abuse upon his girlfriend's daughter, T.K.[4]  T.K. testified that the first act occurred in 1987, when she was six years old and living in an apartment in Houma, Louisiana with her mother, her sister, her brother, and Titzer.  She was awakened on first occasion when Titzer placed his penis in her mouth while she was sleeping.  On another occasion, while she was lying on the sofa in the living room, Titzer put his hand between her legs and rubbed her vagina.  Later that same night, she was awakened by Titzer pushing her head back and forth with his penis in her mouth.  During that time, her mother worked at night and was not home when the incidents occurred.  T.K. did not tell anyone about these incidents.

At some point while T.K. was still six years old, the family moved to a two-bedroom trailer where the children shared one bedroom and their mother and Titzer had the other bedroom.  T.K. slept on the bottom of a bunk bed and her sister slept in the top bed.  Her brother had a separate bed across the room.  T.K. testified that the incidents of abuse continued.  One night, Titzer entered the children's bedroom and pulled her pajamas down and inserted his penis into her vagina.  He then entered her anally which caused her to scream.  This caused her brother to awaken.  Titzer told her

---

[3]St. Rec. Vol. 2 of 4, Indictment, Case No. 351591, 2/17/00; St. Rec. Vol. 3 of 4, Indictment, Case No. 351590, 2/17/00.

[4]These facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2001-KA-2868, pp. 3-5, 6/21/02; *State v. Titzer*, 826 So. 2d 1201 (La. Ct. App. 2002) (Table).

brother to go back to sleep and that T.K. was having a bad dream. Her mother was not home when this incident occurred.

In 1988, the victim began bleeding from her vagina after she fell off of her bike. The gynecologist who treated her, Dr. Donna Waters, testified that vaginal bleeding was extremely abnormal for a six year old child. After a second incident of more profuse vaginal bleeding, T.K. was examined on May 23, 1988, and a mass was found to be growing from her vagina. The medical evaluation resulted in a finding of sexual abuse. Surgery had to be performed on T.K. to reconstruct her vagina and vulva area. The biopsy performed on the mass confirmed that T.K. was infected with condyloma[5] that was sexually transmitted. The examination also disclosed that T.K.'s hymen was not intact. She also tested positive for chlamydia[6] in her rectum and pharynx.

When asked by her mother who did this to her, T.K. informed her that it was Titzer. T.K. was released to social services, and her brother and sister were also removed from their mother's home. No charges were brought at this time.

Several months later, the children were returned to their mother with the understanding that Titzer would no longer be in the home with the children. However, Titzer remained in the home and the abuse continued.

T.K. testified that one night when she was seven, she peeked in her mother's bedroom door, which was partially opened, and saw Titzer naked on the bed masturbating. He heard T.K. at the

---

[5]Condyloma is a wartlike excrescence at the anus or vulva, or on the glans penis. Stedman's Medical Dictionary, p. 397 (27th Ed. 2000).

[6]Chlamydia is a type of bacteria, one species of which causes an infection very similar to gonorrhea in the way that it is spread, the symptoms it produces, and the long-term consequences. http://www.medterms.com.

door and told her to come into the room. He showed T.K. a pornographic magazine and asked her if she wanted to touch his penis.

Titzer committed several other acts of sexual abuse, including performing oral sex on T.K. and raping her. According to T.K., he would use Vaseline and would make several attempts to penetrate her. He also inserted other items into her vagina, including the heel of a shoe and a Popsicle.

In 1989, T.K. informed her sister about the on-going abuse and her sister called an assistance hotline. The Department of Social Services was contacted, and one of their representatives, Octavia Byrd, along with Detective Willie Radou of the Terrebonne Parish Sheriff's Office, went to T.K.'s home to interview the family. The children were taken to the sheriff's office for questioning. T.K. told the interviewers that Titzer touched her where she was not supposed to be touched.

Subsequent medical examinations revealed a bruise and tear in the labia minor and her hymen was dilated. These injuries were consistent with sexual abuse. The doctor ordered medical care for the tear and concluded that the child was not safe in her mother's care. The children were again removed from their mother's care and placed in foster care.

Detective Redau determined that he did not have enough probable cause to arrest Titzer at that time, because of the limited facts given by T.K. After she reached eight years of age, she revealed the details of the years of sexual abuse, and Titzer was arrested.

After the indictments were joined, Titzer was tried before a jury on January 22 and 23, 2001, and he was found guilty as charged.[7] The Trial Court denied Titzer's motions for post-verdict

_____

[7]St. Rec. Vol. 2 of 4, Trial Minutes, 1/22/01; Trial Minutes, 1/23/01; St. Rec. Vol. 4 of 4, Trial Transcript, 1/22-23/01.

judgment of acquittal and for a new trial at a hearing held April 3, 2001.[8]  The State also filed a

multiple bill on March 12, 2001.[9]

On April 12, 2001, the Trial Court sentenced Titzer to serve life in prison without benefit of

parole, probation, or suspension of sentence for the aggravated rape charge in Case No. 341590.[10]

In Case No. 341591, the Court sentenced Titzer to serve 12 years in prison on each count,

concurrently, without benefit of parole, probation, or suspension of sentence.  The Court also denied

Titzer's motion to reconsider the sentence.  The court held a hearing on the multiple bill that same

day.[11]

On April 18, 2001, the Court re-sentenced Titzer as a multiple offender to serve 18 years in

prison for oral sexual battery, Count One of Case No. 341591, without benefit of parole, probation,

or suspension of sentence.[12]  The Court also denied Titzer's motion to reconsider that sentence.[13]

On direct appeal, Titzer's appointed counsel raised four assignments of error under Case No.

341-590:[14] (1) the trial court should have granted the motion to quash the indictment under the

statute of limitations; (2) the trial court should have granted the motion to suppress the statements;

(3) the Trial Court should not have allowed Dr. Mary Eschete to testify about medical conclusions

---

[8]St. Rec. Vol. 2 of 4, Hearing Minutes, 4/3/01; Motion Hearing Transcript, 4/3/01; St. Rec. Vol. 3 of 4, Motion for Post-Verdict Judgment of Acquittal, 1/29/01; Motion for New Trial, 1/29/01.

[9]St. Rec. Vol. 2 of 4, Multiple Bill, 3/12/01.

[10]St. Rec. Vol. 2 of 4, Sentencing Minutes, 4/12/01; Sentencing Transcript, 4/12/01.

[11]*Id.*; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Minutes, 4/12/01; Multiple Bill Hearing Transcript, 4/12/01; Motion to Reconsider Sentence, 4/12/01; Trial Court Order, 4/12/01.

[12]St. Rec. Vol. 2 of 4, Sentencing Minutes, 4/18/01; Sentencing Transcript, 4/18/01.

[13]*Id.*; St. Rec. Vol. 2 of 4, Motion to Reconsider Sentence, 4/19/01.

[14]St. Rec. Vol. 2 of 4, Appeal Brief, 01-KA-2868, 12/26/01.

since the State did not provide the defense with an expert report from her; and(4) the verdict was contrary to the law and evidence. The Louisiana First Circuit affirmed Titzer's convictions on June 21, 2002, finding no merit in his claims.[15]

In a separate appeal, Titzer's counsel raised only one ground for relief related to Case No. 341591 claiming that the multiple offender sentence was excessive.[16] The Louisiana First Circuit affirmed Titzer's convictions and sentences on June 21, 2002, finding no merit to his claim.[17] The Court, however, remanded the multiple offender sentence for modification to reflect that it was to be served without benefit of probation or suspension of sentence, without restriction on parole. The Trial Court complied with this directive at a hearing held August 7, 2002.[18]

The Louisiana Supreme Court denied Titzer's writ application without reasons on June 27, 2003.[19] Titzer's conviction became final 90 days later, on September 25, 2003, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

---

[15]St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2001-KA-2868, 6/21/02; *State v. Titzer*, 826 So. 2d 1201 (La. Ct. App. 2002) (Table).

[16]St. Rec. Vol. 2 of 4, Appeal Brief, 01-KA-2869, 12/26/01.

[17]St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2001-KA-2869, 6/21/02; *State v. Titzer*, 826 So. 2d 1201 (La. Ct. App. 2002) (Table).

[18]St. Rec. Vol. 2 of 4, Sentence Modification Transcript, 8/7/02.

[19]*State v. Titzer*, 847 So. 2d 1252 (La. 2003); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2002-KO-2304; La. S. Ct. Writ Application, 02-KO-2304, 9/4/02 (dated 7/18/02, postmarked 7/30/02).

Over six months later, on March 31, 2004, Titzer submitted an application for post-conviction relief to the Trial Court raising five grounds for relief:[20] (1) he was constructively denied effective assistance of counsel because the State withheld Dr. Eschete's report; (2) he received ineffective assistance of counsel where counsel failed to request funding for an expert witness to contradict Dr. Eschete's testimony; (3) the Trial Court erred in allowing Dr. Eschete to give her conclusions and opinion testimony about the medical records; (4) the Trial Court erred in allowing Dr. Waters and Dr. Clarke to testify as experts where the testimony was used by the State to prove the truth of the matters asserted; and (5) he received ineffective assistance of counsel because counsel failed to object to the testimony of Dr. Waters and Dr. Clarke and failed to move to have their testimony excluded.

The Trial Court held an evidentiary hearing on October 19, 2005, at which time the Court denied the first and third claims as repetitive of issues resolved on direct appeal, and denied the other three claims as meritless.[21] The Court issued its written reasons for judgement on October 27, 2005.[22]

Almost two months later, on December 23, 2005, Titzer untimely[23] submitted a writ application to the Louisiana First Circuit seeking review of the same claims.[24] On March 27, 2006,

---

[20]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 4/5/04 (dated 3/31/04).

[21]St. Rec. Vol. 2 of 4, Post-Conviction Hearing Transcript, 10/19/05.

[22]St. Rec. Vol. 2 of 4, Reasons for Judgment, 10/27/05; Judgment Regarding Application for Post-Conviction Relief, 10/27/05.

[23]Louisiana law provides a 30-day period to file for review of a trial court's ruling with the circuit court of appeal. La. App. Rule 4-3. Applying the appropriate mailbox rule, *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006), the date Titzer signed his writ application, December 23, 2005, is the earliest date he could have submitted it to prison officials for mailing. That date was not within the 30-day period.

[24]St. Rec. Vol. 1 of 4, 1st Cir. Writ Application, 2005-KW-2719, 12/28/05 (dated 12/23/05).

the Louisiana First Circuit denied the writ application on the showing made because Titzer failed to attach the necessary documents needed to review his claims.[25]

Thirty-four days later, on May 1, 2006, Titzer untimely[26] submitted a writ application to the Louisiana Supreme Court seeking review of that ruling.[27] The Court denied the application without reasons on March 9, 2007.[28]

## II.    **Federal Petition**

On October 15, 2007, the Clerk of Court filed Titzer's petition for federal habeas corpus relief, in which he raised seven claims:[29] (1) the trial court should have granted the motion to quash the indictment under the statute of limitations; (2) the trial court should have granted the motion to suppress the statements; (3) the Trial Court should not have allowed Dr. Mary Eschete to testify about medical conclusions since the State did not provide the defense with an expert report from her; (4) the Trial Court erred in allowing Dr. Eschete to give her translation of the medical records; (5) the Trial Court erred in allowing testimony used by the State to show the truth of the matter asserted; (6)(a) he was constructively denied effective assistance of counsel because the State withheld Dr. Eschete's report, (b) he received ineffective assistance of counsel where counsel failed to request funding for an expert witness to contradict Dr. Eschete's testimony, and (c) he received ineffective

---

[25]St. Rec. Vol. 1 of 4, 1st Cir. Order, 2006-KW-0335, 5/30/06; *see also*, Certificate of Mailing, 3/27/06.

[26]La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. Hudson submitted his application on May 1, 2006, which was not within that period.

[27]St. Rec. Vol. 1 of 4, La. S. Ct. Writ Application, 06-KH-1495, 6/13/06 (postmarked 5/1/06).

[28]*State ex rel. Titzer v. State*, 949 So. 2d 435 (La. 2007); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2006-KH-1495, 3/9/07.

[29]Rec. Doc. No. 5.

assistance of counsel because counsel failed to object to the testimony of Dr. Waters and Dr. Clarke and failed to move to have their testimony excluded; and (7) the verdict was contrary to the law and evidence. The State filed a response in opposition to Titzer's petition arguing that his petition was not timely filed.[30]

## III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[31] applies to this petition, which is deemed filed in this court under the federal mailbox rule on August 1, 2007.[32] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

---

[30]Rec. Doc. No. 9.

[31]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Titzer's federal habeas petition on October 15, 2007, when the filing fee was paid. Titzer dated his signature on the petition on August 1, 2007. This is the earliest date on which he could have delivered it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

The State in this case has alleged that Titzer's petition was not timely filed. Although the State's response fails to take into account the required mailbox rules, the record demonstrates that Titzer's federal petition is not timely filed and can be dismissed for that reason.

## IV.   Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[33] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As determined above, Titzer's conviction was final on September 25, 2003. Under the plain language of § 2244, Titzer had until September 25, 2004, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Titzer's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of §

---

[33]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (stating that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures) (citing *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive

claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, the AEDPA filing period began to run on September 26, 2003, the day after Titzer's conviction was final. The filing period continued to run for 187 days, until March 31, 2004, when he submitted an application for post-conviction relief to the state trial court. The writ application remained pending until Monday, November 28, 2005, which was 30 days after the Trial Court ruled, and Titzer did not timely proceed to the Louisiana First Circuit.

The filing period ran again from the next day, November 29, 2005, for another 24 days, until December 23, 2005, when Titzer submitted his untimely writ application to the Louisiana First Circuit. That application remained pending until April 26, 2006, which was 30 days after the circuit court ruled, and Titzer did not timely proceed to the Louisiana Supreme Court.

The filing period began to run again the next day, April 27, 2006, and it continued to run uninterrupted for the remaining 154 days, until September 27, 2006, when it expired. Titzer did not have a <u>properly</u> filed state post-conviction or other collateral review pending during that time.

The Court recognizes that Titzer presented a writ application to the Louisiana Supreme Court on May 1, 2006, during the relevant time period. However, that writ application was submitted over 30 days after the related decision by the Louisiana First Circuit was issued March 27, 2006.[34] Rule X§5 of the Louisiana Supreme Court Rules provides that an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment. In the prisoner context, the Court must also consider when the pleading was submitted to prison officials for mailing. *See Causey*, 450 F.3d at 601.

---

[34]*See* St. Rec. Vol. 1 of 4, Certificate of Mailing, 3/27/06.

The date of May 1, 2006, is the earliest date shown in the record on which Titzer submitted the pleading to prison officials to mail to the Louisiana Supreme Court. In addition, as noted previously, the envelope containing the application was postmarked May 1, 2006, and it was filed June 13, 2006. These dates are beyond the 30-day period allowed under La. S. Ct. Rule X§5. A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-319 (2008). Titzer's application did not interrupt or toll the AEDPA filing period.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). In this case, Titzer has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.[35]

---

[35]Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland*, 130 S. Ct. at 2565 (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden

Titzer's federal petition is deemed filed on August 1, 2007, which is over ten months after the AEDPA filing period expired on September 27, 2006. Titzer's federal petition must be dismissed as untimely filed.

## V.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Stephen Titzer's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[36]

New Orleans, Louisiana, this __10th__ day of August, 2010.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

[36]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.